IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., and WEST VIRGINIA
HIGHLANDS CONSERVANCY INC.,

        Plaintiffs,

v.                                CIVIL ACTION NO. 3:08-0088

HOBET MINING, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

        Pending before the Court is Defendant's Motion to Dismiss (Doc 17) and Plaintiffs' Motion for Partial Summary Judgement (Doc. 21). As explained below, the Court finds that while it initially had jurisdiction over this case, a Consent Decree entered by the Boone County Circuit Court of West Virginia has rendered the case partially moot. The Defendant's Motion to Dismiss is **GRANTED in part**. The Plaintiffs' Motion for Summary Judgment is **DENIED in part, as moot, and held in abeyance.** An issue remains as to whether the Plaintiffs' suit is viable for a limited set of civil penalties.

        Also pending is Plaintiffs' Motion to Schedule Preliminary Injunction Hearing and for Preliminary Injunction (Doc. 11). As the Boone County Court has provided injunctive relief, the motion is **DENIED as moot**.

**Background**

**I.      Regulatory Structure**

Plaintiffs allege violations of both state and federal versions of the Clean Water Act ("CWA") and the Surface Mining Control and Reclamation Act ("SMCRA"). Because the claims are based on the interaction of various provisions of these statutes, an introduction to their relevant structures is helpful.

At the heart of the CWA lies 33 U.S.C. § 1311, which generally prohibits the "discharge of any pollutant by any person." The primary exception to this prohibition is the National Pollutant Discharge Elimination System ("NPDES"), found within 33 U.S.C. § 1342. Under NPDES, the U.S. Environmental Protection Agency ("EPA") or authorized state agency can issue a permit for the discharge of any pollutant, provided that the discharge complies with the conditions of the CWA. 33 U.S.C. § 1342. Essentially, the NPDES program was created to transform generally applicable provisions of the CWA into specific obligations of the individual pollutant discharger. *Envtl. Prot. Agency v. Cal. ex rel. State Water Res. Control Bd.* 426 U.S. 200, 205 (1976). When creating the NPDES permit, the issuing authority must take account of two central concepts: 1) "effluent limitations that reflect the pollution reduction achievable by using technologically practicable controls and 2) any more stringent pollutant release limitations necessary for the waterway receiving the pollutant to meet water quality standards." *Piney Run Pres. Ass'n v. County Comm'rs of Carroll County, Md.* 268 F.3d 255, 265 (4th Cir. 2001).

Plaintiffs' claims also include counts alleged under SMCRA and WV SCMRA (the state version of SMCRA). Each permit issued under these acts contains specific performance standards. One standard mandated by the acts is that mining activities be conducted to "prevent material

damage to the hydrologic balance outside the permit area." 38 C.S.R. § 2-14.5; 30 C.F.R. §§ 816.41(a) & 817.41(a). Another mandatory performance standard is that "[d]ischarge from areas disturbed by mining shall not violate effluent limitations or cause a violation of applicable water quality standards." 38 C.S.R. § 2-14.5.b; *see also*, 30 C.F.R. §§ 816.42 & 817.42. A general condition of every WV SCMRA permit is that all it must meet all applicable performance standards. 38 C.S.R. § 2-3.33.c.

Both the CWA and SMCRA operate through systems of "cooperative federalism" between state and federal governments. Under each act, a state may be authorized to take the primary regulatory role. 33 U.S.C. § 1342 (CWA); 30 U.S.C. § 1243 (SMCRA). State regulations are incorporated "into the unitary federal enforcement scheme" of the CWA. *Bragg v. W. Va. Coal Ass'n,* 248 F.3d 275, 293 (4th Cir. 2001) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 109 (1992)). SMCRA exhibits greater deference to the states. *See id*. Once a state receives primary regulatory authority, pursuant to 30 U.S.C § 1253, federal standards effectively "drop out" in favor of the state SMCRA regulations, which become the operative law. *Id.* at 295.

Despite the differences in regulatory enforcement, both the CWA and SMCRA involve citizens. A citizen may bring suit in federal court against any violator of state or federal standards of the CWA. 33 U.S.C. § 1365.; *see also Bragg*, 248 F.3d at 293. This right of action is statutorily limited by a sixty day notice period and barred when "the Administrator or State has commenced and is diligently prosecuting a civil or criminal action." 33 U.S.C. § 1365. A citizen may also initiate suit for SMCRA violations, subject to the same notice and diligent government prosecution limitations. 30 U.S.C. § 1270. Because federal standards drop out, however, a citizen may not directly enforce federal SMCRA regulations in a citizen suit. *Ohio Valley Envtl. Coalition, Inc. v.*

*Apogee Coal Co.,* 531 F.Supp.2d 747, 760-64 (S.D. W.Va. 2008).  A cause of action does exist to enforce state SMCRA regulations in federal court.  *Id.* (citing *Molinary v. Powell Mountain Coal Co., Inc.*, 125 F.3d 231, 234 (4th Cir. 1997)).

## II.     Factual Background

Plaintiffs seek injunctive relief and civil penalties against Defendant, Hobet Mining ("Hobet"), for effluent violations in four of Defendant's permits: WV0099392; WV1016776; WV1020889; and WV1021028.  They allege that the Defendant has repeatedly discharged more selenium than these permits allow.  Selenium is a naturally occurring element, common in the environment.  It is problematic only in high concentrations, but at certain levels has toxic effects.  Selenium impacts the reproductive cycle of many aquatic species, can impair the development and survival of fish, and can even damage gills or other organs of aquatic organisms subjected to prolonged exposure.  It can be toxic to humans, causing kidney and liver damage, and damage to the nervous and circulatory systems.  Selenium is a bio-accumulative toxin and greater impacts are seen in organisms high on the food-chain.

Federal and state regulators have recognized the toxic nature selenium for some time (the first water quality standards were effective in 1987) but they did not identify it as a problem related to surface mining until the publication of a draft Programmatic Environmental Impact Statement on Mountaintop Removal Mining was published in 2003.  As it turns out, surface mining activities can increase the concentration of selenium in the environment by exposing selenium bearing rock and soil to weathering processes.  Selenium leaches out of the exposed material and is carried by surface runoff to downstream lakes, reservoirs, and waterways.   After the 2003 Programmatic Environmental Impact Statement, the West Virginia Department of Environmental Protections

("WVDEP") began to include selenium limits in permits issued to mining operations in areas where selenium runoff might contribute to excess levels of the pollutant in downstream waterways.

Hobet permits WV0099392 and WV1016776 each contained specific effluent limits for selenium. The WVDEP first included selenium in these permits upon their renewal in 2003. The 2003 permits, however, did not contain final effective limits; rather, they required Hobet to monitor its discharges and report selenium concentrations. After three years of monitoring, final effluent limitations took effect on November 13, 2006. Thereafter, Hobet was subject to discharge limitations of 4.7 µg/l as a monthly average and 8.2 µg/l as a daily maximum. On November 14, 2006, Plaintiffs issued Notices of Intent to Sue ("NOIs") for violations of the selenium limits. The WVDEP responded by filing an enforcement action against Hobet in the Circuit Court of Boone County (Civil Action No. 07-C-3) on January 12, 2007, one day before the expiration of the mandatory sixty-day notice period.

Permits WV1020889 and WV1021028 each subjected Hobet to final effluent limits for selenium on the day they were issued – April 1, 2004 and February 4, 2005 respectively. On March 20, 2007, Plaintiffs filed NOIs for violations of effluent limitations within these two permits. In May 2007, within the sixty-day window, WVDEP amended its Boone County Circuit Court action to include permits WV1020889 and WV1021028.

On June 29, 2007, Plaintiffs initiated an action in this Court alleging violations of each of the four Hobet permits and one permit issued to Hobet's sister company, Apogee. *See OVEC v. Apogee*, Case No. 3:07-cv-00413. On July 18, 2007, Plaintiffs amended their complaint in the *Apogee* case. They acknowledged that WVDEP had commenced a civil action in Boone County to require compliance with effluent limits in the same permits and dropped those claims for relief.

Plaintiffs filed the present action on February 7, 2008. They now allege that WVDEP's prosecution of Hobet in Boone County was not diligent. At the time of Plaintiffs' filing, the WVDEP's action had been on the Boone County court's docket for over a year. During that time the WVDEP had done little to further the case along – it amended the complaint twice: first, to add WV1020889 and WV1021028 to the case; second, to state a claim as to all four permits arising under SMCRA. Exactly one week after Plaintiffs' filing in federal court, WVDEP served a discovery request upon Hobet. On May 16, 2008, Hobet moved to dismiss the present action. One of its principal arguments is that this Court has no jurisdiction because Plaintiffs' suit is barred by the WVDEP's action. For their part, Plaintiffs filed a motion for partial summary judgment on May 30, 2008.

Shortly after the parties' motions became ripe, Hobet informed the Court that it had entered into a settlement and drafted a proposed consent order with the WVDEP. On July 9th, the Court ordered Defendant to file the Consent Order and any supplemental legal authority to support its motion to dismiss within fourteen days of its entry in Boone County Circuit Court. Defendant has done so, and supplemental briefing over the effect of the consent decree has now been filed by all parties.

The final Consent Decree assesses civil penalties for violations from 2003 through March 31, 2008, institutes a series of interim limits to bring Hobet into compliance with its final selenium limits by April of 2010, and mandates Hobet complete several Supplemental Environmental Projects (SEPs). Civil penalties total $4,088,315. Hobet will receive credit of $2,600,000 towards that amount in exchange for the completion of its SEPs. Interim effluent limits for selenium are included because WVDEP found that "immediate compliance with [final] effluent limitations cannot be

achieved completely and reliably. . . ." Consent Decree Doc. 35 Attach. 2. Violation of any of the interim limits for selenium carries a penalty of $1,000 per day.

## Discussion

Hobet requests the Court dismiss Plaintiffs' claims on either of two jurisdictional grounds. First, the defendant argues that because the WVDEP was diligently prosecuting a case against Hobet for the same violations of which Plaintiffs complain, the Court never had jurisdiction. As an alternative, Hobet argues that even if the Court had jurisdiction when the case was filed, the Consent Decree entered by the Boone County Circuit Court renders these proceedings moot. Plaintiffs, of course, argue that the matter is properly before the Court and not rendered moot by the Consent Decree.

The timing of Plaintiffs' complaint, the posture of the case at the time of filing, and the final Consent Decree create a unique situation. The evidence in the record clearly shows that the state court action in Boone County was progressing extremely slowly at the time of Plaintiffs' filing. Then, after Plaintiffs filed their citizen suit, the pace in state court increased dramatically – resulting in a final settlement entered by the Boone County Court in the form of a Consent Decree. It is apparent that Plaintiffs' citizen involvement spurred the WVDEP to action, or at least motivated them to quicken their pace. The Consent Decree, however, does not satisfy Plaintiffs. Although it addresses the specific effluent limitations which underlie each claim for relief, Plaintiffs argue that the Consent Decree imposes too long a schedule for compliance and too lenient civil penalties. As a result Plaintiffs' persist in pursuing their claims in this Court.

Considering all of these facts, and as explained below, the Court finds that Plaintiffs' citizen suit was properly initiated. Federal jurisdiction existed at the time of filing because the WVDEP's

prosecution of Hobet was not diligent. Because, however, the WVDEP increased the pace and effort of its prosecution after Plaintiffs filed their citizen suit – ultimately resolving Hobet's violations through a Consent Decree – the case is now partially moot.

**I.     At the Time of Plaintiffs' Complaint the WVDEP's Prosecution Was Not Diligent.**

No citizen suit may be filed, under SMCRA or the CWA, if a state is "diligently prosecuting" a case for the same violation. 33 U.S.C. § 1365(b)(1)(B); 30 U.S.C. § 1270. To establish jurisdiction despite the existence of a parallel action, Plaintiffs bear the burden of proving the state prosecution is not diligent. *See Piney Run Pres. Ass'n v. County Comm'rs of Carroll County, Md.*, 523 F.3d 453, 459 (4th Cir. 2008). The burden for proving non-diligence is heavy. "A CWA enforcement prosecution will ordinarily be considered 'diligent' if the judicial action 'is capable of requiring compliance with the Act and is in good faith calculated to do so.'" *Id.* (quoting *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewarage Dist.,* 382 F.3d 743 (7th Cir. 2004)). In meeting their burden, a citizen-plaintiff must do more than show an agency's strategy is less aggressive than that which would be pursued by the citizen. *Id.*

Although a court must be deferential to a state enforcement action, the deference owed is not unlimited. "[A] diligent prosecution analysis requires more than mere acceptance at face value of the potentially self-serving statements of a state agency and the violator . . . ." *Friends of Milwaukee's Rivers*, 382 F.3d at 760. As another district court explained, the Court may rely on evidence from the state court docket and determine "the prospects that the state suit would proceed expeditiously to a final resolution." *Conn. Fund for Env't v. Contract Plating Co., Inc.* 631 F.Supp. 1291, 1293 (D. Conn. 1986). This evaluation is based upon the status of the state court proceeding at the time the citizen suit is filed. *Id.; see also, Chesapeake Bay Found. v. Amer. Recovery Co., Inc.*

-8-

769 F.2d 207, 208 (4th Cir. 1985) ("jurisdiction is normally determined as of the time of the filing of a complaint."). If the federal court finds that the state action was not capable of requiring compliance or was not in good faith calculated to do so, it should not hesitate to allow a citizen suit to proceed. *See Friends of Milwaukee's Rivers*, 382 F.3d 743; *see also, Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.,* 890 F.Supp. 470 (D. S.C. 1995).

At the time of the Plaintiffs' filing, WVDEP's prosecution of the Boone County case was not proceeding expeditiously to a final resolution. On February 7, 2008, the date this action commenced, the state court action had been dormant for over a year. The *only* actions WVDEP had taken in that case were to file amendments to its complaint. The first of these two amendments was in response to Plaintiffs' NOIs for permits WV1020889 and WV1021028. That amendment prevented Plaintiffs from filing a citizen suit for alleged permit violations on those permits immediately following the sixty-day notice period. The second amendment added SMCRA claims against all four Hobet permits then pending in Boone County. This amendment prevented Plaintiffs from filing an unimpeded citizen suit based on SMCRA or WV SCMRA. While these two amendments expanded the government's claims against Hobet, they did nothing to progress the case towards resolution. On the contrary, each of these amendments delayed the ultimate resolution of permit violations by impeding a citizen suit, which may have progressed more quickly. Significantly, under the West Virginia Rules of Civil Procedure, a court may dismiss from its docket "an action where[] for more than one year there has been no order or proceeding." W. Va. R. Civ. P. 41(b). When Plaintiffs filed their citizen suit in this Court state court proceeding was subject to dismissal at the discretion of the Boone County court.

To analyze the effect of WVDEP's prosecution on the violator, and thus answer the question of whether it was "capable of requiring compliance," the Court must consider the context surrounding that prosecution. *See Student Pub. Interest Research Group of N.J., Inc. v. Fitzsche, Dodge, & Olcott, Inc.*, 579 F.Supp. 1528, 1535 (D. N.J. 1984) ("An evaluation of 'diligence' measures comprehensively the process and effects of agency prosecution."). Permits WV00099392 and WV10167776 first incorporated selenium limits in November 2003. Hobet was given three years to comply. When the final compliance deadline arrived, WVDEP filed suit in Boone County one day before Plaintiffs would have been permitted to file a citizen suit. Hobet had exceeded its selenium limits on permits WV1020889 and WV1021028 for over two years when Plaintiffs filed their NOIs. Again WVDEP sought to prevent enforcement of the limits through a citizen suit, this time by amending their complaint in Boone County court. As described, the WVDEP's Boone County prosecution languished until Plaintiffs' filing and allegation of non-diligence. WVDEP was also working simultaneously to extend the selenium limits industry-wide. In April 2007, the WVDEP issued 78 Compliance Orders to extend effective final effluent limitations for selenium until 2010. *West Virginia Highlands Conservancy et. al v. McClung*, Appal Nos. 07-10 and 07-12 EQB, Final Order at 10 (W. Va. Envtl. Quality Bd. June 12, 2008). The same Plaintiffs in this case opposed those orders at the administrative level, before the W.Va. Environmental Quality Board ("EQB"). *See generally id.* Although the EQB disagreed with the Plaintiffs and refused to order immediate compliance withe effective selenium limits, they also chastised the WVDEP for its regulatory efforts to solve the problem. The EQB made clear that stronger action was needed, stating "[t]oo much time has been wasted and too little has been done to address the problem. What is perhaps even more amazing is how little the WVDEP seems to expect from the coal industry."

*Id.* at 28.  The EQB went on to hold explicitly that "[t]he WVDEP failed to construct a meaningful compliance schedule." *Id.* at 29.  In this regulatory climate, where the WVDEP responded to selenium violations with compliance extensions and weak performance schedules, a defendant subject to the type of lackadaisical suit brought in Boone County would not feel compelled to comply with its permit limits.  In this context, at the time of Plaintiffs' filing, the WVDEP's enforcement was not "capable of requiring compliance" without a major change of course.

Following the filing of Plaintiffs' complaint and their allegations of dilatory conduct, the pace of litigation in state court did increase dramatically.  A discovery request was filed one week later, on February 14, 2008.  Serious settlement negotiations between the WVDEP and Hobet were underway in May 2008.  By early July, a proposed Consent Decree was drafted and sent out for public comment.  Finally, on September 3, 2008, the Boone County Circuit Court entered the Consent Decree and issued a final order in the case.   These actions (like the EQB's review of WVDEP's compliance orders) were influenced by Plaintiffs' involvement and cannot be attributed solely to WVDEP's own enforcement strategy.  Importantly, these steps were taken *after* the filing of Plaintiffs' complaint in this action.  They are relevant to the discussion of mootness, in the next section, but will not be considered in the context of the Court's initial jurisdiction.  The Court finds that it possessed jurisdiction at the time of Plaintiffs' filing because the state's parallel prosecution for the same violations was not diligent.

## II.     As a Consequence of WVDEP's Increased Activity and the Resulting Consent Decree, The Present Action Is Partially Moot.

The decision that the Court had jurisdiction at the onset of the case does not settle the question of the Court's current jurisdiction.  Although the WVDEP took little action to prosecute Hobet in Boone County Court prior to the initiation of this action, the agency has since settled the

case. The subsequent resolution of the state's enforcement action – through a binding and judicially enforceable consent decree – renders the present action partially moot.

Article III of the United States Constitution mandates that a court hear only continuing cases and controversies. *See United States v. Ala. S.S. Co.,* 253 U.S. 113, 116 (1920). "Simply stated, a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the out-come." *Incuma v. Ozmint,* 507 F.3d 281, 286 (4th Cir. 2007) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)). "The requisite personal interest that must exist at the commencement of litigation . . . must continue throughout its existence." *Id.* (ellipses in original) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) ("*City of Dallas*").

Developments in a parallel government prosecution, subsequent to the filing of a citizen's complaint, may moot the citizen suit. *See Chesapeake Bay Found. v. Am. Recovery Co., Inc.* 769 F.2d 207 (4th Cir. 1985). When a polluter voluntarily ceases violations, the standard for mootness is high. "The defendant must demonstrate that it is *absolutely clear* the alleged wrong behavior could not reasonably be expected to recur." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.* 484 U.S. 49, 46 (1987) (internal quotations omitted) (emphasis in original). Though the Fourth Circuit Court of Appeals has not had opportunity to address the issue, three other circuit courts have determined that the standard for evaluating the effect of a *mandatory* consent order should be more deferential to a defendant than the standard for determining *voluntary* compliance. *See City of Dallas* 529 F.3d at 528; *Comfort Lake Ass'n Inc. v. Dresel Contracting, Inc.* 138 F.3d 351, 355-56

(8th Cir. 1998) ("*Comfort Lake"*); *Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 128 (2d Cir. 1991) ("*Eastman Kodak*").

In the context of a mandatory consent decree a more deferential standard is appropriate because "[t]he primary function of a citizen suit is to spur agency enforcement of law." *City of Dallas*, 529 F.3d at 528 (citing *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988); *see also Eastman Kodak* 933 F.2d at 127. Creating a high standard for mootness "would discourage defendants in a citizen [suit] from entering a consent decree with federal or state enforcement agencies. . . shift[ing] primary enforcement responsibility from the expert agencies to the necessarily generalist courts." *Id.; see also Comfort Lake* 138 F.3d at 357. Each of the three courts of appeal to address the issue decided that the proper standard was whether there existed "a realistic prospect that violations alleged in [plaintiffs'] complaint will continue notwithstanding the consent decree." *Id.; Comfort Lake* 138 F.3d at 355; *Eastman Kodak,* 933 F.2d at 128. The Fifth Circuit Court of Appeals made clear that this realistic prospect test was comparable to the test for diligence. *City of Dallas*, 529 F.3d at 528-29 ("Further, the 'realistic prospect' mootness standard that we employ today comports with Congress's policy that 'diligent prosecutions' preempt citizen suits."). The Court considers this realistic prospect test appropriate and adopts it as the relevant standard.

When considering whether a citizen suit has been mooted by government action, a court should consider injunctive relief separate from civil penalties. *See City of Dallas,* 529 F.3d at 529-531; *Comfort Lake,* 138 F.3d at 354-57. "When a claim for injunctive relief becomes moot, a related claim for money relief is not mooted 'as long as the parties have a concrete interest, however small, in the outcome of the litigation." *Comfort Lake*, 138 F.3d at 355-56 (quoting *Ellis v.*

*Brotherhood of Ry. Airline & S.S. Clerks*, 446 U.S. 435, 442 (1984)). The Court will address injunctive relief first, and civil penalties in a subsequent section.[1]

        A.        PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE MOOT

To determine if a claim for injunctive relief is moot, a court should employ the realistic prospect test and determine "whether violations will 'continue' in the sense that the violations will not be cured even after the remedial plan implemented by the consent decree has been fully implemented in accordance with reasonable timetables." *City of Dallas,* 529 F.3d at 530. While the Court has ordered the implementation of selenium treatment as injunctive relief in a related case, it is by no means an expert in the field. *See Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Co., Llc*, 555 F.Supp.2d 640, 648-49. Although this Court has criticized the WVDEP for prior lack of diligence, the agency employs environmental experts and engineers far better suited to understand the problem than this Court. The Court would not substitute its own plan for compliance in place of WVDEP's without evidence that the agency's plan was ill-conceived or developed in bad faith. The WVDEP deserves criticism for its lack of diligence early on in this case, and in related matters, but the agency is capable of requiring compliance if properly motivated. It appears that citizen involvement was the motivation necessary to set the WVDEP on the right track. The schedule for injunctive relief in the Consent Decree, though not as rapid as Plaintiffs would like, is reasonable. Plaintiffs raise two arguments in attempt to show that WVDEP's compliance schedule will not succeed. First, they argue that the Consent Decree ties Hobet to unproven

---

[1] Alleged violations of the surface mining acts stem from violations of effluent limitations regulated directly under the CWA. If WVDEP is able to require compliance with effluent limitations through effective injunctive relief and deter future violations through civil penalties, these actions will address Plaintiffs' claims under CWA, SMCRA, and WV SCMRA.

technology that cannot succeed in meeting the required selenium effluent limitations within the mandatory time-frame. Second, Plaintiffs argue that the Court should infer from Hobet's record of frequent violation that the Defendant's violations will continue.

The response to the first argument is simple – the Consent Decree does not bind Hobet to any single technology. The Corrective Action Plan, contained within the Consent Decree, does point to zero valent iron technology as the first treatment method to be installed and tested. It is not, however, to be relied on in exclusion of any other technology. The Consent Decree specified that "Hobet shall have *some form* of treatment project for the control of selenium concentrations in place and in operation for all applicable outlets no later than December 31, 2009." Proposed Settlement and Consent Order (Doc. 35 Attach. 2) at 6. The interim permit limits are enforceable regardless of whether zero valent iron technology proves to be effective. *Id.* at 4-5. At any point after June 30, 2009, WVDEP has the authority to evaluate a treatment method employed by Hobet and order modification of the existing method or the implementation of a new treatment method. *Id.* at 6-7. Hobet is required to test two treatment systems, in addition to zero valent iron, as a condition of the Consent Decree. *Id.* at 10. While WVDEP and Hobet clearly hope that zero valent iron technology proves to be a feasible treatment option, the Consent Decree is flexible enough to require compliance even if the preferred treatment option fails. The deadline is not contingent upon demonstrating success of a particular method.

While Hobet has failed to meet permit limits and state compliance orders in the past, the recent Consent Decree is in a different category. First, it is more comprehensive and detailed than past permit limits and compliance orders. It establishes interim limits with defined penalties. No prior order has contained such a schedule for compliance or mandatory fines for noncompliance.

Second, the Consent Decree is not simply an agency issued permit or compliance order. Rather, it is a settlement reviewed and approved by the Boone County Circuit Court. Such a consent decree has the force of a court order. Even considering Hobet's past noncompliance, there is little reason to believe that Hobet will take the present Consent Decree lightly.

Plaintiffs do not contend that immediate compliance with the selenium limits is possible. As both they and the Court are aware, no solution to the selenium problem has yet been implemented at any West Virginia coal mine. Even an existing technology would take months to manufacture and install. Under these circumstances, the Court cannot find that the schedule for compliance contained within the Consent Decree is unreasonable. Although the schedule is slower than one which might have been proposed by Plaintiffs, the WVDEP was within its discretion to establish deadlines and work with Hobet to develop a plan for treatment. There is no realistic prospect that Hobet will still be in violation of its selenium limits on the final compliance date– April 4, 2010.

### B. PLAINTIFFS' CLAIMS FOR CIVIL PENALTIES ARE MOOT FOR VIOLATIONS THROUGH MARCH 31, 2008

The Consent Decree entered in Boone County Circuit Court requires Hobet to pay Civil penalties of $4,088,315. Of this, $1,488,315 is to be paid directly to WVDEP; Hobet will receive credit for the remaining $2,600,000 in exchange for completing SEPs. The civil penalties were imposed for CWA violations that occurred between 2003 and March 31, 2008. Plaintiffs argue that their claims for civil penalties are not moot because the civil penalties imposed by the Consent Decree are too low to serve as a deterrent.

The fact that civil penalties are less than those sought by Plaintiffs is not a reason to allow their suit to proceed. If citizens could sue for civil penalties that the government chose to forgo, they would usurp the primary enforcer role and undermine the state's discretion. *See Gwaltney of*

*Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 61 (1987). Because of the discretion granted to state governments as primary enforcers of the act, various courts have been reluctant to allow collateral attacks on civil penalties contained within a binding consent order. *See City of Dallas,* 529 F.3d at 531; *Comfort Lake,* 138 F.3d at 356. If, however, the penalty imposed is not sufficient to have a deterrent effect, the Court is within its discretion to allow the citizen suit to proceed. *See Friends of the Earth , Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 890 F.Supp. 470 (D. S.C. 1995). A principal purpose of a civil penalty is to "remove or neutralize the economic incentive to violate environmental regulations; " thus, a penalty is unlikely to deter a violator if it does not remove the competitive advantage of continued non-compliance. *v. Smithfield Foods, Inc.* 191 F.3d 516 (4th Cir. 1999) (internal quotations omitted).

To date, there is no generally accepted method for treatment of selenium discharges from coal mines in West Virginia. It is impossible, therefore, to specify the economic benefit Hobet received from non-compliance. The Court is certain, however, that the penalties imposed upon Hobet are sufficient to remove any competitive advantage of continued non-compliance. First, the fine levied against the Defendant is not trivial – even disregarding the amount credited for SEPs, Hobet must still pay nearly $1.5 million in civil penalties to the WVDEP. Additionally, it is important to recognize that Hobet is one of only a few companies that will be subject to *any* penalty for past discharges of selenium into West Virginia waterways. The civil penalties imposed by the WVDEP and the Boone County court do not eliminate Hobet's need to pay any amount necessary to achieve final compliance, nor do they prevent the WVDEP from imposing additional penalties for future noncompliance. Hobet will be subject to similar permit limitations and have similar exposure to future penalties for noncompliance as other members of the industry. The penalties for

past noncompliance are additional burdens. The civil penalties do not leave Hobet in a position of competitive advantage; there is no realistic prospect that Hobet's violations will continue after the completion of the interim schedule for compliance.

### C. THE COURT DEFERS RULING ON THE VIABILITY OF PLAINTIFFS' CLAIMS FOR VIOLATIONS AFTER MARCH 31, 2008

It is unclear whether the Consent Decree effectively modifies Hobet's underlying permit. If it is not an effective modification then Plaintiffs may be able to pursue civil penalties for continuing permit violations.[2] While Plaintiffs commented on this issue, it has not been extensively briefed. Plaintiffs are **ORDERED** to file a supplemental brief on the viability of their claims for violations after March 31, 2008. The brief should address two issues: first, the viability of claims concerning violations between April 1, 2008 and September 5, 2008, the date of the Boone County Court's approval of the proposed Consent Decree; second, the viability of claims concerning violations between September 5, 2008 and the present. The supplemental brief shall be due within **30 days** of the receipt of this Order. Response and reply deadlines shall follow the standard time frame specified under Local Rule 7.1.

---

[2] The Court recognizes that Defendants have raised arguments such as the *Younger* and *Colorado River* abstention doctrines which may be appropriate grounds for dismissal even if the claims for relief are not moot. The Court will address these if it determines that claims for certain civil penalties are not moot.

## CONCLUSION

For the above stated reasons, Defendant's motion to dismiss (Doc. 17) is **GRANTED in part**. Plaintiffs' motion for partial summary judgment (Doc. 21) is **DENIED in part, as moot**. The Court has not yet determined the viability of Plaintiffs' case for a limited set of civil penalties. Plaintiffs are **ORDERED** to brief the issue within **30 days** of the receipt of this Order. Additionally, the Platiniffs' motion for a preliminary injunction and preliminary injunction hearing (Doc. 11) is **DENIED as moot.**

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: December 18, 2008

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE